ROGERS, J.
 

 The Haynesville Mercantile Company, Inc., as the holder of á certain mortgage note signed by the defendant, proceeded by executory process against ihe property mortgaged to enforce payment of' the balance due on the note. The mortgagor enjoined the seizure on the ground that his obligation had been extinguished by payment, compensation, novation, set-off, and remission. After a lengthy trial on the issues presented by the parties litigant, the court below rejected plaintiff’s demands and dissolved the injunction granted in consequence thereof. The ease is before us on plaintiff’s appeal from the judgment.
 

 The note in question is dated May 18,1921, payable 1 year after date, and is for $6,500, with interest and attorney’s fees. When sued upon, it was subject to a credit, as alleged by the holder, of $3,970.55 as of date February 5, 1924.
 

 Plaintiff, in his petition for injunction, specifically alleges the following as offsets against the note, viz.:
 

 (1) $3,500 paid to the defendant company and its president, S. L. Beene, between May 18, 1921, the date of the note, and December 31, 1924.
 

 (2) $3,970.55, for which he was credited by the defendant company in its petition for ex-ecutory process.
 

 (3) $5,653, representing the proceeds of the sales of certain oil and gas leases by the defendant company and its president for his account.
 

 (4) $7,100 as damages for an alleged breach of an alleged fiduciary relationship existing between him and the president of the defendant company in connection with the sale of his oil and gas leases, representing the difference between $15 per acre actually obtained as a consideration for the leases and $25 per acre which, he avers, should have been obtained therefor.
 

 He also claims damages in the sum of
 
 *139
 
 $2,500 for the alleged illegal seizure in this proceeding of his property.
 

 The defendant corporation was organized in 1917. Prior thereto its business was conducted as a commercial co-partnership. The plaintiff was one of the customers of the firm, and he continued to deal with the concern after it was formed into a corporation. Some time in the year 1917, a settlement was had between plaintiff and the copartnership, and the present controversy involves the correctness of plaintiff’s account, with the corporation, running from May 12, 1917, to June 15, 1922. One of the credit items on the account, under date of May 19, 1921,' is the mortgage note for $6,500.
 

 Plaintiff’s testimony in reference to his allegation that he paid $3,500 to the defendant company between May 18, 1921, the date of the note, and December 31, 1924, is wholly unsatisfactory. After numerous questions propounded to him by defendant’s counsel for the purpose of obtaining his explanation of the claim, he "finally stated that he
 
 thought
 
 it was made up of certain cotton turned over to the defendant company, and that lie had not secured credit for the slips or receipts issued therefor. In support of his statement he produced a letter from the defendant company informing him of the loss by fire on March 31, 1922, of some of the cotton made in 1921. But the evidence adduced on behalf of the defendant is overwhelming to the effect that the slips or receipts held by the plaintiff covered the same cotton that was burned, and that plaintiff had received the proper credit for all the cotton represented thereby. This contention of the plaintiff is, therefore, entirely without merit.
 

 The item of $3,970.55 claimed by plaintiff as a credit on the note represents the credit balance to his account on the books of the defendant company. It does not represent any separate and distinct payment on the note, but constitutes all the credit from any source whatever to which plaintiff is entitled.
 

 It is also contended by plaintiff that he should be credited on the note with $5,653 as the proceeds of certain oil leases that were sold in 1921. We do not find any merit in the contention. The mortgage note was executed on May 18, 1921,'and two of the leases were entered into long prior thereto — the one to the Gulf Refining Company for a bonus of $4,200 on March 5, 1921, and the one to J. B. Smitherman for a bonus of $3,000 on March 28, 1921. The third lease to the Standard Oil Company for a bonus of $3,453 was executed on May 18, 1921, the day the note was signed. It is clear, therefore, that it was never intended by the parties that the money derived from these leases was to be credited on the note.
 

 At the time the leases were executed, plaintiff was heavily indebted to the defendant company. Included in this indebtedness was the sum of $4,000 which he had obtained in cash shortly before the execution of the first lease. The transactions concerning the leases were handled by Mr. S. L. Beene, the president of the defendant company. The third lease was entered into at Minden, La. At that time the books of the defendant company were not available, and neither party knew the exact condition of plaintiff’s account. Mr. Beene was of the opinion that plaintiff owed his company approximately $6,500. The title of the land that was leased •was vested in Mr. Beene, and he conveyed it to plaintiff for a stated consideration of $6,-500 for which he received plaintiff’s note, retaining a mortgage on the land to secure its payment. On May 19, 1921, the day after the mortgage note was received by the defendant company, through its president, the account of the plaintiff was credited with the amount of the note. It is clear, therefore, that the mortgage note was not intended to be and was not treated as an additional obligation of the plaintiff.
 

 
 *141
 
 Plaintiff was not permitted to offer any testimony on his claim for $7,100 as damages in connection with the sale of oil and gas leases. All evidence in reference to this item was excluded upon defendant’s objection. The district judge ruled, on the authority of Jones v. Bouanchaud, 158 La. 27, 103 So. 393, that since plaintiff had obtained the injunction in the case without bond, as provided in Code Prac. art. 739, he was confined to the proof of the particular causes set forth in said article — a claim for damages not being one of said causes. We find no error in the ruling. Nor is there any merit in plaintiff’s claim for $2,500 damages for the alleged illegal seizure in this proceeding of his property.
 

 The evidence adduced on the trial of this case shows that since the beginning of his business dealings with the defendant, first as a partnership and, later, as a corporation, defendant not only furnished supplies and merchandise to plaintiff for his personal use, and for the use of his family, but that it also furnished supplies and merchandise to plaintiff’s negro tenants, through whom he conducted his rather extensive farming operations. Plaintiff kept no record whatever of his transactions with the defendant company or with his tenants. These accounts were kept for him in the books of the company. He inspected these books on numerous occasions and was furnished monthly with itemized statements of the accounts. He also made his settlements with his tenants on the basis of the accounts as shown in the books. No question was ever raised by plaintiff as to the correctness of these accounts, nor as to his liability, until the institution of the foreclosure proceeding's.
 

 In order to arrive at a correct statement of the various accounts, the court below appointed two reputable auditors, and their report is in the record. They found that the books of the defendant company were kept in a systematic manner and according to a standard method of bookkeeping. Their report shows a net .credit balance of $3,617.52 as against a net credit balance of $3,631.46 on the account filed in evidence by the defendant company and a net credit balance of $3,970.55 as alleged in plaintiff’s petition for the executory process. The difference between these items represents an allowance of interest, $476.07, to defendant on his credit balance of $3,631.46 on the account, less his note of $110 and interest, $136.98, erroneously included in the account, making the credit balance as of date February 5, 1924, the sum of $3,970.55, as acknowledged and allowed by the defendant company. The petition for executory process was filed March 16, 1925.
 

 Plaintiff contends that he never issued any written authority for his tenants to obtain their supplies from the defendant company nor for the charging of these purchases to his account. And'he complains of the admission, over his objection, of evidence to show his promise to pay their debts. The objection was properly overruled. The position of the defendant company is that plaintiff was liable for the accounts of his tenants as principal and not as surety. We think the evidence fully sustains this contention. In fact, the defendant admitted, on the witness stand, that he furnished his tenants through the defendant company with their supplies on a share basis for what they might get out of their crops. And the auditors’ report shows that plaintiff received part of the cotton raised by his tenants.
 

 Plaintiff pretends ignorance of an entry charging him with $1,000 for 160 acres of land. However, there appears to be no mys^ tery about the entry. The evidence shows that on May 18, 1921, the defendant company conveyed to plaintiff by authentic act a tract of land containing 160 acres for a recited consideration of $1,000 cash. It appears, however, that the consideration was not actually paid in cash, but was charged to plain
 
 *143
 
 tiff’s account, to be eventually paid out of tbe avails of oil and gas leases. These facts were admitted by plaintiff on his cross-examination.
 

 In his brief and in oral argument, plaintiff objects to the interest charges as set forth in his account with the defendant company. He contends that in certain instances these charges were as high as 15 per cent, and 30.02 per cent. We do not find any basis for the contention. Mr. Viser, one of the auditors, testified that he had figured on one of the interest charges, and that it was his recollection that the rate was 8 per cent. Mr. Loy L. Beene,- secretary and treasurer of the defendant company, testified that interest was allowed plaintiff on the credit balances at the same rate as charged in the mortgage note, which was 8 per cent.
 

 We have also examined the other objections to the account made by plaintiff in his testimony, and, without going into the details, our conclusion is that they are unfounded.
 

 For the reasons assigned, the judgment appealed from is affirmed at the appellant’s cost.